# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

ANTHONY L. DAVIS,

    Plaintiff,

    v.

Z. WHEELER, et al.,

    Defendants.

No. 2:16-CV-2917-TLN-DMC-P

FINDINGS AND RECOMMENDATIONS

Plaintiff, a prisoner proceeding pro se, brings this civil rights action under 42 U.S.C. § 1983. Before the Court is Defendants' motion for summary judgment. ECF No. 45. Plaintiff opposes the motion. ECF No. 50. Defendants contend that Plaintiff failed to properly exhaust his administrative remedies as required under the Prison Litigation Reform Act. ECF No. 45. The Court agrees with Defendants that Plaintiff did not exhaust his administrative remedies. The undersigned United States Magistrate recommends that the District Court grant Defendants' motion and dismiss this case without prejudice.

/ / /

/ / /

/ / /

/ / /

/ / /

# I. BACKGROUND

**A. Plaintiff's Claims:**

Plaintiff initially asserted a host of allegations against various defendants. See generally ECF No. 1. The Court screened Plaintiff's original complaint, found that Plaintiff had only stated a viable claim for the use of excessive force in violation of the Eighth Amendment to the United States Constitution, and dismissed the complaint with leave to amend. See ECF No. 14 at 4. Plaintiff filed a first amended complaint. ECF No. 19. Alongside reasserting an Eighth Amendment violation, Plaintiff alleged, among other claims, First Amendment violations. See, e.g., id. at 16–19; see also ECF No. 22 at 3, 6–7. The Court screened the amended complaint. ECF No. 22. The Court again concluded that Plaintiff only stated a viable Eighth Amendment claim, specifically against Defendants Z. Wheeler and N. Romney.[1] Id. at 3, 7–9 The Court found that Plaintiff had not stated any other claim against any other defendant. See id. at 3–6

The Court provided Plaintiff an opportunity to file a second amended complaint. Id. at 9. Two months passed. Plaintiff never filed an amended complaint. The Court thus ordered service on Plaintiff's Eighth Amendment claim. ECF No. 23. The Court also issued findings and recommendations recommending that the District Court dismiss Plaintiff's other claims and the other named Defendants with prejudice. ECF No. 24 at 4. The District Court adopted the findings and recommendations in full. ECF No. 28.

This case now proceeds on Plaintiff's claim that Defendants Wheeler and Romney used excessive force violation of the Eighth Amendment. In sum, Plaintiff claims that, while he was incarcerated at California State Prison, Sacramento (CSP-Sac), Wheeler and Romney harassed and taunted him as they escorted him to a psychiatric appointment. ECF No. 19 at 3. Unsatisfied with taunting, Wheeler allegedly twice slammed Plaintiff face-first into the ground. Id. Romney twisted and jumped Plaintiff's wrist, shoulder, and back. See id. Romney pushed Plaintiff's body against the ground while Plaintiff was shackled. See id. at 3–4. Plaintiff contends that Wheeler also jumped on his back, causing significant injury that required immediate treatment. Id. at 4.

---

[1] Plaintiff spells Romney's last name as "Romany," but it appears to the Court that his name is properly spelled as "Romney." See, e.g., ECF Nos. 19 at 2–3; 45-2 at 1–3.

B.  **Plaintiff's Allegations Concerning Administrative Remedies:**

In his complaint, Plaintiff alleges multiple issues with regard to his pursuit of administrative remedies. Plaintiff asserts that he properly exhausted his available remedies. ECF No. 19 at 16. He contends that he submitted a grievance at CSP-Sac on October 10, 2015, and presented the facts now contained in his complaint. Id. Prison officials denied his grievance on November 10, 2015. Id. Plaintiff appealed to the second level. Id. Officials partially granted that appeal sometime around August 2016. Id. Still dissatisfied, Plaintiff appealed to the third level. Id. He does not state whether prison officials granted or denied the third-level appeal.[2] Id.

## II. THE PARTIES' EVIDENCE

A.  **Plaintiff's Noncompliance with Local Rule 260(b):**

Local Rule 260 requires motions for summary judgment to include a separate Statement of Undisputed Facts. L.R. 260(a). Each Statement must enumerate each specific, material fact relied upon in the motion and cite to any document—for example, a deposition—establishing that fact. Id. Parties opposing motions for summary judgment must reproduce the facts in the moving party's Statement and admit the facts that are undisputed and deny those that are disputed. See L.R. 260(b). The opposing party must include with each denial a citation to any document supporting the denial. Id. Opposing parties may also include concise Statements of Disputed Facts encompassing all material facts over which there is a genuine dispute. Id.

Defendants properly included a Statement of Undisputed Facts alongside their motion for summary judgment. ECF No. 45-3. Plaintiff, however, failed to properly reproduce Defendants' Statement of Undisputed Facts admitting facts that are undisputed and denying those that he contends are disputed. See ECF Nos. 50, 56. Instead, Plaintiff submitted a few paragraphs of mostly irrelevant argument with exhibits attached. ECF Nos. 50, 56. Plaintiff's exhibits include copies of grievances, CDCR decisions on grievances, a list of prisoners convicted of murder, and an abstract of judgment reflecting Plaintiff's murder conviction.[3] ECF Nos. 50, 56.

---

[2] Plaintiff notes that, at the time he filed his complaint in federal court, he did not have access to a copy machine and could not attach copies of his grievances as exhibits. ECF No. 19 at 16.

[3] Plaintiff filed two documents with exhibits ostensibly supporting his opposition to the motion for summary judgment. ECF Nos. 50, 56. As indicated below, viewing Plaintiff's filings liberally, the Court will consider both submissions.

Plaintiff is entitled to oppose Defendants' motion. The Court considers his opposition. The Court will also consider Plaintiff's exhibits. But Plaintiff has not complied with Local Rule 260(b). The Court deems Plaintiff to have admitted those facts not disputed by his submissions. See, e.g., Fed. R. Civ. P. 56(e); Beard v. Banks, 548 U.S. 521, 527 (2006) ("[B]y failing specifically to challenge the facts identified in the defendant's statement of undisputed facts, [plaintiff] is deemed to have admitted the validity of the facts contained in the [defendant's] statement."); Brito v. Barr, No. 2:18-cv-00097-KJM-DB, 2020 WL 4003824, at *6 (E.D. Cal. July 15, 2020); see also Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004). Where Plaintiff challenges only portions of an alleged undisputed fact, the Court deems admitted any unchallenged portions.

**B. Defendants' Statement of Undisputed Facts:**

Defendants submit the following Statement of Undisputed Facts (DUF). ECF No. 45-3. As support, they attach exhibits and the declarations of S. Boxall, a Grievance Coordinator at CSP-Sac, and Howard E. Moseley, Associate Director of the Office of the Appeals with the California Department of Corrections and Rehabilitation (CDCR).[4] See ECF Nos. 45-4, 45-5.

1. The California Department of Corrections and Rehabilitation uses a computer program system to electronically log and track inmate administrative appeals through all levels of review. (Boxall Decl. ¶ 4; Moseley Decl. ¶ 3.)

2. At all relevant times, CDCR and the California State Prison, Sacramento Grievance Office had an administrative process available for inmates to submit appeals. (Boxall Decl. ¶¶ 2–4; Moseley Decl. ¶¶ 1–4.)

3. The CSP-Sac Grievance Office receives, reviews, and tracks all non-medical inmate appeals submitted for first and second-level review concerning events there. Accepted first and second-level appeals are assigned a log number in the institutions' computer system. (Boxall Decl. ¶¶ 2, 4.)

4. CDCR's Office of Appeals (OOA) receives, reviews, and maintains inmates' nonmedical appeals accepted at the third and final level of review. When OOA receives an appeal, it receives a third-level tracking number and is entered into OOA's computer tracking system.

---

[4] The Court may cite to Defendants' undisputed facts using "DUF" and the fact's number (e.g., DUF No. 1).

Information maintained in the system includes the date OOA received the appeal, the appeal log number, the date the appeal is closed, and the appeal's final disposition. (Moseley Decl. ¶¶ 2, 3.)

5. The events that are the subject of this lawsuit occurred at CSP-SAC on October 10, 2015. (ECF No. 19 at 3.)

6. Plaintiff Davis alleges that Defendants Wheeler and Romney physically threw him to the ground during an escort, and then Wheeler jumped on his shoulder. (ECF No. 19 at 3–4.)

7. Davis's appeal log no. SAC-15-03629 was received by the CSP-SAC Grievance Office on October 27, 2015. The appeal alleged that Wheeler and Romney had used excessive force against him on October 10, 2015. (Boxall Decl. ¶ 6 and Ex. 2 at 3, 5.)

8. Appeal no. SAC-15-03629 was bypassed at the first level of review, and partially granted in a second-level decision dated November 27, 2015, in that an inquiry (investigation) was conducted which concluded staff did not violate CDCR policy. (Boxall Decl. ¶ 6 and Ex. 2 at 1–2.)

9. Appeal no. SAC-15-03629 was received for third level review by the OOA on March 9, 2016. The appeal was canceled in a third-level decision dated June 2, 2016. The decision stated that the second level response had been returned to Davis on December 31, 2015, but was not resubmitted to the third level of review until March 9, 2016, which exceeded time constraints. (Moseley Decl. ¶ 8 and Ex. 2 at 1.)

10. Davis's appeal log no. OOA-15-10198 was received by the OOA on June 16, 2016. This appeal contested the cancellation of appeal no. SAC-15-03629. In the appeal, Davis contended that he had been moved to another prison before the second level decision on appeal no. SAC-15-03629 was mailed to him and then from there to another prison, which explained his delay in submitting the appeal to the third level of review. (Moseley Decl. ¶ 9 and Ex. 3 at 3, 5.)

///
///
///
///

11.     Appeal no. OOA-15-10198 was granted in part at the third level of review on August 22, 2016, with a finding that the events described by Davis may have possibly hindered his ability to timely submit appeal no. SAC-15-03629 to the OOA, where it was confirmed that he had been transferred from CSP-SAC before the second level decision was mailed to him there and to two other prisons successively thereafter. (Moseley Decl. ¶ 9 and Ex. 3 at 2.)

12.     The third level decision on appeal no. OOA-15-10198 stated that the OOA would accept appeal no. SAC-15-03629 for processing if it was timely resubmitted. (Moseley Decl. ¶ 9 and Ex. 3 at 2.)

13.     No further submissions of appeal no. SAC-15-03629 were received from Davis. (Moseley Decl. ¶ 10 and Ex. 1.)

**C. Plaintiff's Opposition:**

Plaintiff's opposition to the motion for summary judgment, as indicated, does not reproduce Defendants' Statement of Undisputed Facts. Plaintiff filed two documents with exhibits ECF Nos. 50, 56. Those documents and the exhibits constitute his opposition.

The first document is the more relevant of the two. Plaintiff, however, only concludes that the motion for summary judgment must be denied because material facts require the Court to permit the case to proceed to trial. ECF No. 50 at 1. In a single sentence, Plaintiff then contends that the "following material (fact(s))" show that he exhausted his administrative remedies and that prison grievance coordinators stonewalled his administrative appeals.[5] Id. at 2. Plaintiff does not cite to the record or include additional evidence of interference his appeals. See id.

An attached administrative decision does indicate that prison officials canceled Plaintiff's third-level appeal (namely, appeal number SAC-15-03629, mentioned in the above undisputed facts) relating to Plaintiff's grievance alleging Defendants used excessive force against him. Id. at 6. Another decision states that Plaintiff had not timely submitted an appeal of a finding

---

[5] Plaintiff contends that as "stated in his motion to oppose summary judgment on August 6th, 2020," Defendants' motion for summary judgment should be denied. ECF No. 50 at 2. It is unclear what document Plaintiff refers to. Defendants filed their motion for summary judgment on September 11, 2020. ECF No. 45. Plaintiff filed his opposing documents on September 25, 2020, and January 25, 2021. ECF Nos. 50, 56. The only documents filed on August 6, 2020, were Defendants' responses to Plaintiff's motion to compel discovery (which the Court denied). ECF Nos. 39. 40. Plaintiff did file a "response" to Defendants' Answer in August 2020, but that is not a permissible pleading under the Federal Rules of Civil Procedure absent a Court order. Fed. R. Civ. P. 7(a)(7). The Court issued no such order.

1    that Defendants did not violate CDCR policy.[6] Id. at 7. But the decision *reinstated* the appeal Id.
2    CDCR recognized that Plaintiff had been transferred from CSP-Sac to multiple different prisons
3    between December 29, 2015, to January 28, 2016. Id. CDCR concluded that Plaintiff's transfers
4    may have hindered his ability to timely submit an appeal. Id. The decision stated that CDCR would
5    accept Plaintiff's appeal if he resubmitted it within applicable time constraints. Id.

6           Otherwise, the first document that Plaintiff submitted in opposition to the pending
7    motion includes copies of a decision granting an investigation and a copy of his initial grievance
8    asserting that Defendants used excessive force against him. Id. at 5–6, 8–10. Plaintiff does not
9    include any other substantive argument. See id.

10          Plaintiff's second submitted document is irrelevant. See ECF No. 56. The document
11   almost entirely concerns COVID-19. See id. Plaintiff includes what appears to be a denial of a
12   separate healthcare grievance over COVID-19 and discrimination complaints; a list of inmates in
13   CDCR custody, on which Plaintiff has circled inmates convicted of first-degree murder; and a
14   meandering aside on the dangers of COVID-19. Id. at 2–11. Plaintiff also includes an abstract of
15   judgment officially summarizing his conviction of first-degree murder in 2002. Id. at 13–14. None
16   of the submissions bear upon this case in any way.

17          As noted, because Plaintiff did not reproduce or admit or deny any of Defendants'
18   alleged undisputed facts, Plaintiff has admitted anything that his pleadings do not contradict.[7]

---

[6] The decision cites the tracking number assigned to Plaintiff's grievance of Defendants' alleged actions, indicating that the appeal that prison officials canceled concerned Defendants. ECF No. 50 at 5–7; see DUF Nos. 7–11.

[7] Plaintiff does include a list of three cases citations, ostensibly in support of his opposition. ECF No. 50 at 3. He cites Booth v. Churner, 532 U.S. 731 (2001), Wolff v. McDonnell, 418 U.S. 539 (1974), and Strong v. David, 297 F.3d 646, 649 (7th Cir. 2002).

Booth held that the Prison Litigation Reform Act requires inmates, even if they seek only money damages, to complete a prison administrative process that is capable of providing some relief on the inmate's complaint, even if it cannot provide money. Booth, 532 U.S. at 733–34, 741. Ostensibly, Plaintiff cites Booth because the United States Supreme Court implied that some relief must be available, and that exhaustion may not be required where no relief is available. See id. at 736–37, 736 n.4 ("Without the possibility of some relief, the administrative officers would presumably have no authority to act on the subject of the complaint, leaving the inmate with nothing to exhaust.").

In Wolff, the Supreme Court addressed revocation of "good time" credit and attendant due process requirements of similar disciplinary proceedings, such as provision to inmates of written notices of charges underlying potential revocation of good time credits and a written statement of the evidence relied upon by prison factfinders. See Wolff, 418 U.S. at 560–70; see also Hayward v. Marshall, 603 F.3d 546, 559 (9th Cir. 2010) (en banc) (overruled on other grounds by Swarthout v. Cooke, 562 U.S. 216 (2011)); Evans v. Martin, No. 1:21-cv-00093-BAM (PC), 2021 WL 2002578, at *12 (E.D. Cal. May 19, 2021).

### III. STANDARD OF REVIEW

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Wash. Mut. Inc. v. United States, 636 F.3d 1207, 1216 (9th Cir. 2011). A fact is material if it might affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fresno Motors, LLC v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2014). A dispute is genuine if there is sufficient evidence for a reasonable factfinder to resolve the issue in favor of the nonmoving party. E.g., Anderson, 477 U.S. at 248; Fresno Motors, 771 F.3d at 1125. At the summary judgment stage, the Court only determines whether there is a genuine issue for trial. Thomas v. Ponder, 611 F3d 1144, 1149 (9th Cir. 2010). The Court liberally construes a pro se prisoner plaintiff's filings. Id. at 1150.

Summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact. Id. at 323. A party demonstrates that summary judgment is appropriate by "informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. On an issue for which the nonmoving party will have the burden of proof at trial, the moving party need only point out "an absence of evidence to support the nonmoving party's case." Id. at 325. A moving party may also produce evidence negating an essential element of the nonmoving party's claim or defense. E.g., Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).

---

Strong is not binding on this Court. The Eastern District of California sits in the Ninth Circuit. Strong is a decision of the United States Court of Appeals for the Seventh Circuit. Strong, 297 F.3d at 646. In any event, Plaintiff cites to page 649 of the decision, presumably for its implication that prison grievances are "complete" when they contain all the information that the administrative system requires them to contain. Id. at 649. Or, if there are no guiding rules, grievances are sufficient if they put the prison on notice of the nature of the alleged harm. Id. at 650. The Ninth Circuit has adopted the Seventh Circuit's reasoning that, if a prison's grievance procedures are silent as to factual specificity, grievances are adequate if they alert prison officials to the nature of the harm for which an inmate seeks redress. Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).

If the moving party meets its initial burden, the burden shifts to the opposing party to present specific facts showing a genuine issue of a material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986); see In re Oracle Sec. Litig., 627 F.3d 376, 387 (2010). An opposing party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247–48 (emphasis in original).

In this regard, the opposing party must move beyond the pleadings through citations to the record—such as to affidavits, depositions, and admissions—and designate specific facts establishing a genuine issue for trial. Celotex, 477 U.S. at 324. The opposing party must show more than "the mere existence of a scintilla of evidence." Anderson, 477 U.S. at 252. A nonmoving party, however, is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987). Nevertheless, a "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

The Court may consider other materials in the record not cited by the parties, but it is not required to do so. See Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); see also Simmons v. Navajo County, 609 F.3d 1011, 1017 (9th Cir. 2010). The Court need not dredge the record to establish an absence or presence of factual disputes when the evidence is not adequately set forth in opposing papers. See, e.g., Simmons, 609 F.3d at 1017; Carmen, 237 F.3d at 1031. The Court, furthermore, cannot engage in determinations of credibility or weighing of evidence. Manley v. Rowley, 847 F.3d 705, 711 (9th Cir. 2017). Nevertheless, the evidence must be viewed "in the light most favorable to the nonmoving party," and "all justifiable inferences" must be drawn in that party's favor. E.g., Anderson, 477 U.S. at 255; Fresno Motors, 771 F.3d at 1125. Summary judgment is inappropriate if conflicting ultimate inferences may reasonably be drawn from the undisputed facts. Fresno Motors, 771 F.3d at 1125.

### III. DISCUSSION

Defendants argue that Plaintiff failed to exhaust administrative remedies. ECF No. 45-2 at 1–2, 6–7. They specifically contend that Plaintiff failed to exhaust his administrative remedies because he did not resubmit his canceled third-level appeal after CDCR reinstated it. Id. The Court agrees.

**A. Exhaustion Requirements:**

The Prison Litigation Reform Act (PLRA) requires prisoners seeking relief under § 1983 to exhaust all available administrative remedies prior to bringing suit. See 42 U.S.C. § 1997e(a); Manley, 847 F.3d at 711. Exhaustion is mandatory. E.g., Ross v. Blake, 136 S. Ct. 1850, 1856–57 (2016); Jones v. Bock, 549 U.S. 199, 211 (2007); Soto v. Sweetman, 882 F.3d 865, 869 (9th Cir. 2018). Because inmate plaintiffs must exhaust available remedies *before* filing suit, bringing an action while the administrative process is pending is unsatisfactory. See Andres v. Marshall, 867 F.3d 1076, 1078 (9th Cir. 2017); McKinney v. Carey, 311 F.3d 1198, 1199–1201 (9th Cir. 2002). Exhausting administrative remedies while an action is pending does not satisfy § 1997e(a). Andres, 867 F.3d at 1078; McKinney, 311 F.3d at 1199–1201; see Cano v. Taylor, 739 F.3d 1214, 1219–20 (9th Cir. 2014).

The United States Supreme Court addressed the exhaustion requirement in Jones v. Bock. The Court made three relevant holdings. First, prisoners are not required to specially plead or demonstrate exhaustion in the complaint because lack of exhaustion is an affirmative defense that defendants must plead and prove. Jones, 549 U.S. at 216. Second, individuals named as defendants in a complaint do not necessarily need to be named in the grievance process for exhaustion to be considered adequate. Id. at 217–19. A particular grievance process, not the PLRA, defines the procedural rules that prisoners must follow. Id. Third, the PLRA does not require dismissal of an entire complaint if some, but not all, claims are unexhausted. Id. at 219–24.

The defendant bears the burden of showing non-exhaustion in the first instance. See Albino v. Baca, 747 F.3d 1162, 1171–72 (9th Cir. 2014). If a defendant meets their burden, the burden shifts to the plaintiff to show that the grievance process was effectively unavailable. See id. But there are no special circumstance exceptions to the exhaustion requirement. Ross, 136 S. Ct.

10

at 1856–62. The PLRA does not authorize courts to look to the particulars of a case to determine if circumstances excuse a failure to exhaust. See id. at 1856–58. A plaintiff's chance to show that the administrative process was unavailable constitutes the PLRA's written exception. See id. at 1858. A plaintiff must exhaust available administrative remedies but need not exhaust *unavailable* remedies. Id. Put another way, inmates are obligated to exhaust only those grievance procedures "capable of use" to obtain some relief for the conduct that the inmate challenges. Id. at 1858–59. An administrative remedy might be unavailable when procedures operate to a "dead end," and officials do not actually provide relief; when an administrative scheme is so complex that inmates cannot use it; or when officials simply thwart the grievance process. Id. at 1859–60. Inmates' obligation to exhaust remedies persists so long as *some* remedy is available. Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005). That obligation ceases once there are no remedies available. Id.

The PLRA requires "proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2007); Merchant v. Corizon Health, Inc., 993 F.3d 733, 742 (9th Cir. 2021). Inmates must comply with the deadlines and "critical procedural rules" of a prison's administrative relief system. Woodford, 548 U.S. at 90–91, 95; Merchant, 933 F.3d at 742. An inmate must use all the steps that a prison employs in its grievance process, permitting the prison a chance to reach the merits of the grievance and correct its own errors. Woodford, 548 at 90–91, 94; see Fuqua v. Ryan, 890 F.3d 838, 844–45 (9th Cir. 2018); Reyes v. Smith, 810 F.3d 654, 657 (9th Cir. 2016). When reviewing exhaustion under California prison regulations, which have since been amended, the United States Court of Appeals for the Ninth Circuit observed that, substantively, a grievance is sufficient if it "puts the prison on adequate notice of the problem for which the prisoner seeks redress." Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010); see Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).

Until June 1, 2020, California allowed inmates to administratively appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a) (repealed 2020); Anglin v. Pratti, No. 1:19-cv-01334-NONE-SAB (PC), 2021 WL 1925795, at *2–3 & n.1 (E.D. Cal. May 13, 2021). CDCR used a three-step process for grievances. Anglin, 2021 WL 1925795, at *3 (describing the former process).

Broadly described, under the former three-step process, prisoners had to submit a form describing both the issue being challenged and the requested relief. Id. If the inmate did not receive relief at the first level, they had to submit a second-level appeal. See id. If the inmate did not receive adequate relief at the second level, they had to proceed to the third level. See id. Reaching a decision at the third level of review exhausted administrative remedies. See Cal. Code Regs. tit. 15, §§ 3084.1(b); 3084.7(d)(3) (repealed 2020); Reyes, 810 F.3d at 657 (recognizing CDCR's three-level system).

Under the prior regulations, prison officials could cancel inmate appeals for any of the reasons listed in CDCR's regulations. Cal. Code Regs. tit. 15, § 3084.6(c) (repealed 2020). Among the permissible reasons for cancellation were failure to comply with time limits or duplication of a previous appeal. Id. § 3084.6(c)(2), (4). A cancellation decision did *not* exhaust administrative remedies. Id. § 3084.1(b).

Inmates could appeal cancellation of an underlying grievance. Id. § 3084.6(a)(3), (e). That appeals process, however, was *separate* from the direct appeals of an underlying grievance. See id. If an inmate prevailed in appealing a cancellation decision, CDCR could then accept the underlying (i.e., the previously canceled) appeal. Id.

**B. Plaintiff Failed to Properly Exhaust Administrative Remedies:**

Most of the facts regarding Plaintiff's pursuit of administrative relief are undisputed. The evidence indicates that Plaintiff failed to comply with CDCR's administrative process, as required to exhaust the relief available to him.[8] Plaintiff has not shown otherwise.

It is undisputed that CDCR had a grievance process at the time of Defendants' alleged use of excessive force against Plaintiff. DUF No. 2. Defendants concede that Plaintiff pursued some remedies prior to suing. See id. at 3; DUF Nos. 7–11. Plaintiff filed a grievance complaining of the excessive force. DUF No. 7. CDCR bypassed the first level and granted an investigation at the second level. DUF No. 8. The investigation concluded that neither Wheeler nor Romney had violated CDCR policy. Id. Plaintiff attempted to appeal to the third level. DUF No. 9.

---

[8] As noted, California amended the three-step grievance procedure effective June 1, 2020. See Anglin, 2021 WL 1925795, at *2 n.1. The events alleged in Plaintiff's operative complaint occurred before that repeal took effect. The three-step process governs Plaintiff's case.

Plaintiff's third-level appeal was untimely. Id. CDCR canceled the appeal. Id. Plaintiff appealed the cancellation and argued that he had been transferred amongst prisons several times, hindering his ability to timely appeal the second-level decision. DUF No. 10. CDCR granted Plaintiff's appeal of the cancellation and stated that it would accept the third-level appeal if he timely resubmitted it. DUF Nos. 11–12. Plaintiff never resubmitted the appeal. DUF No. 13.

Plaintiff does not seriously challenge any of the above facts, and the Court has deemed admitted anything in Defendants' Statement of Undisputed Facts that Plaintiff's submissions do not contradict. Plaintiff contends in both his complaint and on opposition that he exhausted administrative remedies, but he has not submitted anything to buttress that proposition. Instead, the copies of grievance appeals and CDCR's responses that Plaintiff submits confirm the lion's share of Defendants' assertions. See ECF No. 50 at 5–10. Plaintiff's submissions confirm that he began the grievance process but untimely appealed CDCR's second-level decision that cleared Defendants of wrongdoing. Id. None of the submissions indicate that Plaintiff resubmitted his third-level appeal after CDCR rescinded its cancellation of Plaintiff's appeal. See id.

Plaintiff's bare statements do not create even metaphysical doubt as to exhaustion. They certainly do not establish a genuine dispute over his failure to exhaust. Generally, such a failure is fatal. The PLRA required Plaintiff to exhaust available administrative remedies. 42 U.S.C. § 1997e(a); Manley, 847 F.3d at 711. And he was required to have done so *properly*. Woodford, 548 U.S. at 93; Merchant, 993 F.3d at 742. Plaintiff was required to comply with the procedural rules of CDCR's administrative relief scheme, including deadlines. Woodford, 548 U.S. at 90–95; Merchant, 933 F.3d at 742. CDCR's directive that it would accept Plaintiff's appeal if he resubmitted it in a timely manner was a procedure with which Plaintiff was required to comply to achieve exhaustion. See Woodford, 548 U.S. at 90–95; Britton v. Compas, No. 1:18-cv-00848-AWI-JDP, 2020 WL 5414372, at *2–3 (E.D. Cal. Mar. 25, 2020) (finding that, because an inmate did not resubmit a rejected grievance as instructed, he failed to exhaust available remedies). Plaintiff did not comply. DUF Nos. 11–13. And in so failing, Plaintiff never reached the third-level decision that would have exhausted his remedies. Cal. Code Regs. tit. 15, §§ 3084.1(b); 3084.7(d)(3) (repealed 2020); see Reyes, 810 F.3d at 657; Britton, 2020 WL 5414372, at *2.

1           Defendants have met their initial burden of showing the absence of any genuine
2   issue of material fact going to exhaustion. Plaintiff has not established any dispute to the contrary.
3   Because Defendants have carried their burden of showing non-exhaustion, it is thus Plaintiff's
4   burden to show that there is something about his case that made the available administrative
5   remedies unavailable to him. Albino, 747 F.3d at 1172; see Anglin, 2021 WL 1925795, at *5.

6           Plaintiff contends that CDCR officials stonewalled his appeals. ECF No. 50 at 2.
7   And to Plaintiff's credit, inmates are excused from the obligation to exhaust if administrative
8   remedies are effectively unavailable.[9] See Ross, 136 S. Ct. at 1858–62; Fuqua, 890 F.3d at 849–50
9   & n.11; Rodriguez v. County of Los Angeles, 891 F.3d 776, 792 (9th Cir. 2018) (citation omitted).
10  To echo the Supreme Court's observation, that exception has real muscle. See Ross, 136 S. Ct. at
11  1858. The exception triggers in several circumstances, including when a relief process operates to
12  a dead end, and prison officials do not actually provide relief, or when officials inhibit the grievance
13  process through "machination, misrepresentation, or intimidation." Id. at 1858–62; see Fuqua, 890
14  F.3d at 849–50 & n.11; Rodriguez, 891 F.3d at 792; Anglin, 2021 WL 1925795, at *5.

15          But does that exception affords no relief for Plaintiff here. His superficial contention
16  that prison officials obstructed his appeals does nothing to resuscitate his case. Indeed, the evidence
17  belies his assertion at every turn. CDCR accepted his initial appeals and granted an investigation.
18  DUF No. 8; ECF No. 45-4, Boxall Decl., Ex. 2.; ECF No. 50 at 5. CDCR accommodated Plaintiff's
19  transfers and overturned the cancellation of Plaintiff's untimely third-level appeal. DUF No. 11;
20  ECF No. 45-4, Moseley Decl., Ex. 3 at 2; ECF No. 50 at 7. CDCR informed Plaintiff that it would
21  accept his third-level appeal if he resubmitted it. DUF No. 12; ECF No. 45-4, Moseley Decl., Ex.
22  3 at 2; ECF No. 50 at 7. No evidence indicates that Defendants or any other CDCR official impeded

---

[9] The Court also notes that improper screening of prisoners' grievances can render administrative remedies effectively unavailable. Cortinas v. Portillo, 754 F. App'x 525, 526–27 (9th Cir. 2018); Sapp, 623 F.3d at 823; see Andres, 867 F.3d at 1078–79. That is to say, if prison officials screen out a prisoner's appeals for improper reasons, then the prisoner cannot follow the appeals process. Sapp, 623 F.3d at 823. Administrative remedies are unavailable in that circumstance. Id. Other than Plaintiff's standalone assertion that CDCR stonewalled his grievances, there is no indication of improper screening in this case. Untimely filing of an appeal is an express reason for which CDCR could reject an appeal. Cal. Code Regs. tit. 15, § 3084.6(c)(4) (repealed 2020). Moreover, Plaintiff was able to appeal his cancellation decision. See Cortinas, 754 F. App'x at 527 ("Because Cortinas could have appealed his cancellation decision . . . the improper cancellation of his appeal did not render administrative remedies effectively unavailable to him."); Wilson v. Zubiate, 718 F. App'x 479, 482 (9th Cir. 2017); Britton, 2020 WL 5414372, at *2.

Plaintiff's access to the prison grievance system. The evidence shows that CDCR recognized Plaintiff's circumstances and that the administrative relief system remained available to him.

The Court finds that Plaintiff has not established a genuine dispute of material fact going to his exhaustion of administrative remedies. Nor has Plaintiff met his burden of coming forward with evidence that generally available administrative remedies were effectively unavailable to him. See Albino, 747 F.3d at 1172. The undersigned United States Magistrate Judge accordingly recommends that the District Court grant Defendants' motion for summary judgment and dismiss this case without prejudice.

## V. CONCLUSION

In the light of the foregoing, the undersigned United States Magistrate Judge recommends that Defendants' motion for summary judgment (ECF No. 45) be **GRANTED**, and that this case be dismissed without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

*Dated: July 29, 2021*

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE